# 24-1605

## United States Court of Appeals
## for the Second Circuit

PASTOR PAUL DOYLE, DBA Cornerstone Church, and CLAY CLARK, DBA ReAwaken America,

*Plaintiffs/Appellees,*

v.

ATTORNEY GENERAL LETITIA JAMES,
in her individual and official capacity,

*Defendant/Appellant.*

On Appeal From the United States District Court
For the Western District of New York

## BRIEF FOR APPELLEES

TRICIA S. LINDSAY
*Attorney for Appellees*
531 E. Lincoln Ave, 5B
Mount Vernon, NY 10552

Dated: October 23, 2024

# TABLE OF CONTENTS

**PAGE**

APPELLEES' STATEMENT OF THE CASE………………………….……..…. 1-4

ARGUMENT…………………………………………………………….……… 4-22

  I. The Attorney General is Not Entitled to Qualified Immunity
as to the First Amendment Claim……………………………………………….. 4-8

  II. Appellees' Have Sufficiently Plead Standing……………………………….. 8-12

  III. Appellees' Retaliation Claim Survives at This Stage………………..…… 12-14

  IV. The Appellant's Statements Are Not Shielded by Privilege…………..…… 14-15

  V. Absolute Privilege Does Not Apply……………………………..…… 15-17

  VI. Appellees' Have Established Actual Malice………………………………..17-22

  CONCLUSION……………………………………………………………….. 22

# TABLE OF AUTHORITIES

**PAGE**

*Allen v. Wright*,
468 U.S. 737, 751 (1984)……………………………………………….…………… 8

*Armstrong v. Simon & Schuster*,
85 N.Y.2d 373, 380-81 (N.Y. 1995)………………………………………………… 19

*Banco De La Republica De Colombia v. Bank of N.Y. Mellon*,
10 Civ. 536 (AKH), at 24 n.8 (S.D.N.Y. July 26, 2013) ………………………… 14

*Biro v. Conde Nast*,
883 F.Supp.2d 441, 465-66 (S.D.N.Y. 2012)…………………….……………….. 19

*Bowring v. Sapporo U.S.A., Inc.*,
234 F. Supp.3d 386, 389 (E.D.N.Y. 2017) ……………….…………………… 13

*Brian v. Richardson*,
87 N.Y.2d 46, 50-51 (1995)………………………………………………….. 19

*DeBlasio v. North Shore University Hospital*,
213 A.D.2d 584, 585 (2d Dep't 1995)…………………………………………….. 18

*Diaz v. FCI Lender Servs., Inc.*,
17-CV-8686 (AJN) (S.D.N.Y. Sep. 28, 2018) ………………………………… 12

*Dorsett v. Cnty. of Nassau*,
732 F.3d 157, 160 (2d Cir. 2013) ……………………………….………….....… 4

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
282 F.3d 83, 90 (2d Cir. 2002) …………………………………..…………… 7

*Gagliardi v. Vill. of Pawling*,
18 F.3d 188, 195 (2d Cir. 1994) …………………………………...…………… 7

*Gautsche v. State*,
67 A.D.2d 167, 169 (3d Dep't 1979) …………………………….………… 14, 15

*Hammerhead Enters., Inc. v. Brezenoff*,
707 F.2d 33, 39 (2d Cir. 1983) …………………………………………… 11

*Immuno A.G. v Moor-Jankowski*
( 77 N.Y.2d 235, *cert denied* 500 U.S. 954)……………………………………………… 20

*Kesner v. Dow Jones & Co., Inc.*,
515 F.Supp.3d 149, 173 (S.D.N.Y. 2021)……………………………………………… 19

*Kilcoin v. Wolansky*,
428 N.Y.S2d 272, 276 (N.Y. App.Div. 1980) ……………………………...…………….. 15

*Krusen v. Moss*,
105 N.Y.S.3d 607, 611 (N.Y. App.Div. 2019) ……………………………………………… 16

*Liberman v. Gelstein*,
80 N.Y.2d 429 (N.Y. 1992) ……………………………………………………………… 17

*Lombardo v. Stoke*,
222 N.E.2d 721, 724 (N.Y. 1966) ………………………………………………………… 15

*Masson v. New Yorker Magazine, Inc.* ,
501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447(1991)…………………………… 20

*Metzler v. Pure Energy*
*U.S. LLC*, 21-CV-9798 (VEC), at \5 (S.D.N.Y. Feb. 6, 2023) ……………...……… 10, 12

*Nat'l Rifle Ass'n of Am. v. Vullo*,
49 F. 4th 700, 715 (2d Cir. 2022) …………………………………………...……… 6, 11

*Okwedy v. Molinari*,
333 F.3d 339, 344 (2d Cir. 2003) …………………………………………….…….. 11

*Press v. Chemical Investment Services Corp.*,
166 F.3d 529, 538 (2d Cir. 1999) ………………………………………………………… 14

*St. Amant v. Thompson*,
390 U.S. 727, 731-732 (1968)……………………………………………….…….. 17, 18

*Swift v. Superintendent*,
9:18-CV-01204 (GTS/TWD), at \22 (N.D.N.Y. Feb. 17, 2022) ……………………….. 13

*Tabbaa v. Chertoff*,
509 F.3d 89, 102 (2d Cir. 2007) ………………………………………….…………… 7

*Thomas H. v. Paul B.* ,
18 N.Y.3d 580, 584, 942 N.Y.S.2d 437, 965 N.E.2d 939 (2012)………………………… 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ……………………………………………………….. 9

*United States v. Turner*,
18-cr-00068, at 20 (S.D.N.Y. Jan. 31, 2023) ……………………………...…………… 13

*Vivar v. Senkowski*,
335 F. Supp.2d 344 (E.D.N.Y. 2004) …………………………………….…………… 12

*Zherka v. Amicone*,
634 F.3d 642, 646 (2d Cir. 2011) …………………………………………………… 7

*Zieper v. Metzinger*,
474 F.3d 60 (2d Cir. 2007) …………………………………….………………… 7, 11

## <u>STATUTES</u>

New York Executive Law § 63(1), (3), (9), (10), (12)………………………...…… 15, 16

## APPELLEES' STATEMENT OF THE CASE

The Plaintiffs/Appellees District Court Complaint contains more than sufficient factual matter, which, when accepted as true, rise to the level of plausible claims against the defendant. This action is premised on a letter sent from the defendant to the plaintiffs on August 3rd, 2022. The letter was addressed to General Michael Flynn and Clay Clark, courtesy of Cornerstone Church, and mailed to Cornerstone Church's address in Batavia, New York.

In the letter, the defendant asserts multiple facts that are untrue, and then uses her fabricated allegations to make veiled threats against the plaintiffs, capitalizing on her authority as "New York's top law enforcement officer." Dkt # 1, ¶ 31.

The accusations made against the plaintiffs in the letter have no basis in fact. The defendant begins her letter by stating facts that she knew or should have known to be completely false. After crafting a false background and narrative of the defendants, their character, and who they associate with, Ms. James than uses these inflammatory statements to infer that the plaintiffs' event is likely to result in "unlawful conduct", as well as "violence, intimidation, threats, and harassment…" Dkt # 1, ¶ 26. In the very next sentence, Ms. James cites the penalties under the law for directing harassment and threats at people based protected characteristics; and then continues to cite more penalties that she could  impose on the plaintiffs  if they engage in behavior that no reasonable and non-politically motivated person could infer that they would actually engage in. Dkt # 1, ¶ 26.

The letter sent by the defendant was veiled intimidation and a subtle attempt at coercion, under the guise of simply and innocently " reminding [plaintiffs] that New York Law prohibits racially motivated violence….".  Dkt # 1, ¶ 21. Ms. James cannot honestly assert that she thought the plaintiffs needed reminding, just in case they forgot, that racially motived violence is unlawful in New York.  This is just one example of her veiled threats under color of law. Ms. James' political motivations in sending the letter rise well above the level of speculation. Ms. James does not send such veiled threats to politically left leaning or democrat organizations who wish to hold rallies in this state. She has and is continuing to use her office to try and subdue speech that she disagrees with, albeit under the camouflage of her position as New York State Attorney General.

The defendant attempts to characterize her letter to the plaintiffs as being completely innocent and simply done "in furtherance of her duty to protect New Yorkers from racially motivated violence." Dkt # 1, ¶ 41. This was clearly not the purpose of the letter. Ms. James certainly does not send out warning letters to all law-biding groups who wish to organize an event in her state, and she most certainly is not sending veiled threats to any democratic or left leaning organizations. Ms. James political bias is not some well-kept secret. She has consistently used her platform as "New York's top law enforcement officer", to disparage conservatives and right leaning organizations. This letter was sent by Ms. James because Plaintiff Clark has built a significant following, the Reawaken America tour was achieving success, and Ms. James wanted to chill and stifle speech that she disagrees with.

The letter sent by Ms. James erroneously and baselessly asserts that the plaintiffs and their organization are tied to "white nationalist ideals", connected to "The Great Replacement Theory", warning others of the impending "white genocide in efforts to replace native born Americans with immigrants". This is emphatically false. Ms. James then states Plaintiff Clark and Reawaken America has allegedly made "past extremist statements" and then uses this fabrication as her justification for sending this letter.

Ms. James continues her baseless assertions, deceitfully accusing the plaintiffs of making "regular allusions to white nationalist ideals", which are "linked to violent actions", and then she recklessly ties the plaintiffs' directly to the mass shooting in Buffalo, "and other recent episodes of racially motivated violence in New York and throughout the country." Dkt # 1, ¶ 24.

After making these false statements crafted solely to disparage and intimidate the plaintiffs, she then threatens them with legal action and criminal punishment by graciously reminding them that New York law prohibits racially motivated violence and instructing them to take "all necessary steps" to ensure the event complies with New York State law. Ms. James then offers veiled accusations that the plaintiffs are likely to engage in violence, intimidation and harassment directed at people of color, as well as fraud, and then threatens them with a $5,000 fine for each penalty. Dkt # 1, ¶ 26.

No such letter has been sent by Ms. James to a democrat or left leaning organization. If Ms. James was actually concerned about the safety of New Yorkers, then letters such as this would be commonplace from Ms. James' office. They are not. New York State hosts constant political rallies from a myriad of organizations, including

democratic, some of which have perpetuated violence, and Ms. James does not send out such "reminder" letters.

The fact is, Ms. James abused her position as "New York's top law enforcement officer" by using her authority to covertly threaten the plaintiffs in an attempt to chill their speech. There was no other purpose to the letter. The concerns voiced by Ms. James are illegitimate, as the bases for them are an obvious pretext for sending the threatening and coercive letter. The verbiage in Ms. James' letter is a transparent attempt to hide her motives behind her official title and to intimidate the plaintiffs into canceling their event. As the Attorney General of New York, she is held to a higher standard than the average defendant. As such, she is not immunized from liability simply because her threats did not work.

## ARGUMENT

## I. THE ATTORNEY GENERAL IS NOT ENTITLED TO QUALIFIED IMMUNITY AS TO THE FIRST AMENDMENT CLAIM

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation and internal quotation marks omitted).

Appellant does not contest that plaintiffs have adequately pleaded the first element of this claim, i.e., that their gathering and speech at the ReAwaken America Tour were protected by the First Amendment.

However, appellant challenges the second element, arguing that the Court should reject plaintiffs' "conclusions" regarding defendant's intent in sending to plaintiffs the letter regarding the Tour. Plaintiffs' complaint alleges facts, not mere legal conclusions, regarding defendant's motivations in sending the letter. For example:

- Defendant "saw the Reawaken America tour filled with her political rivals and wanted them out of the state. She then leveraged her power, authority, and official title as Attorney General of the State of New York to defame, slander, and threaten fully law-abiding citizens, a church, and its congregants who were simply and peacefully, exercising their constitutional and civil rights;

- "Pastor Doyle and Mr. Clark have a civil right to assemble and speak, so do the attendees and participants at the ReAwaken America event. Ms. James leveraging her authority and New York law to intimidate the Plaintiffs' free speech, and right to assemble, without any rationale other than political hatred, was the only law that was violated here;

- DEFENDANT James' letter to Plaintiffs also had the intent of creating community vitriol towards the PLAINTIFFS, which certainly increased the likelihood of violence against the Plaintiffs and their organizations;

- The "motivating factors for [defendant's] contemptuous letter were the political and religious viewpoints of the Plaintiffs coupled with their race and color;

- "The Plaintiffs here have a clear First Amendment Right to assemble and speak. When they attempted to exercise that right, the Defendant drafted and sent them a politically driven letter specifically designed to chill their speech;" and

- "The letter sent by the Defendant was meant to intimidate and harass the Plaintiffs into not exercising these rights through government coercion and veiled threats of

investigation and prosecution into Pastor Paul and Cornerstone Church, Clay
Clark, and the ReAwaken America Tour."

Dkt. #1, ¶¶ 16, 30, 39, 50, 53, 54.

Appellant next argues that plaintiffs' First Amendment claims fail because
defendant's letter to plaintiffs was protected government speech.

"Under the government speech doctrine, public officials are generally free to favor
certain views over others when they speak." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F. 4th
700, 715 (2d Cir. 2022) (citation omitted), cert. granted, 144 S. Ct. 375 (Nov. 3, 2023)
(No. 22-842).3 "A viewpoint-neutrality requirement is antithetical to a healthy
representative democracy, and when a government official embarks on a course of action,
she may well embrace one viewpoint and reject others." *Id.*

"Nevertheless, in certain circumstances, some government speech may infringe on
private individuals' free speech rights." *Id.* "Government officials may not engage in
unjustified threats or coercion to stifle speech." *Id.* "Accordingly, although government
officials are free to advocate for (or against) certain viewpoints, they may not encourage
suppression of protected speech in a manner that can reasonably be interpreted as
intimating that some form of punishment or adverse regulatory action will follow the
failure to accede to the official's request." *Id.*

The tone of defendant's letter is not one of attempted persuasion or advocacy for a
particular viewpoint, i.e., an "attempt[ ] to convince." Vullo, 49 F.4th at 715. Rather, the
letter—written on official letterhead—opens with defendant's invocation of her title as

"New York's top law enforcement officer" and then expresses "concerns" to plaintiffs, including false allegations of "past extremist statements made by yourselves and the other featured speakers on the tour." Dkt. #1, p. 21.

Chilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing. *Zherka v. Amicone,* 634 F.3d 642, 646 (2d Cir.2011) (lost government contract); *Tabbaa v. Chertoff,* 509 F.3d 89, 102 (2d Cir.2007) (additional scrutiny at border crossing); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 90 (2d Cir.2002) (revoking a building permit); *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 195(2d Cir.1994) (refusal to enforce zoning laws).

Appellant admits in her *Motion to Dismiss* that "the Tour was the subject of media coverage well before AG James sent the Letter to Clark and Flynn, and religious leaders spoke out against the Event both publicly and to Plaintiff Doyle directly months before appellant sent the Letter 'highlighting' that 'some of the speakers were connected to white supremacists." Dkt # 1, ¶ 21.

Appellant admits to taking unfounded media reports and using them as a basis and/or premise for sending a threatening letter to law abiding citizens crafted to chill their speech. Appellant than adds that her letter could not have damaged plaintiffs because they "waded into a hotbed issue", "aware of the massive backlash", from "multiple groups." Nowhere does Ms. James explain why receiving backlash from the public on a

hotbed issue entitles her to fan the flames and endanger the plaintiffs by sending a letter of such a threatening and defamatory nature. Ms. James cannot immunize herself from liability by saying she was simply acting in accordance with the "massive backlash from multiple groups." She has a responsibility to follow the law, not the political lynch mobs that favor her preferred ideologies. As a matter of fact, Ms. James should have been far more concerned with the safety of the event organizers and participants given her knowledge of the "massive backlash from multiple groups", and her admitted "duty" to "protect New Yorkers from extremist violence." If anything in this case, the plaintiffs' were the ones *in danger*, not the ones who created it.

Indeed, the appellant absolutely ignores the fact that democrat and left leaning "extremists", who hate the plaintiffs for their beliefs, also exist, and if there was any legitimate threat of violence at the event, it was towards its organizers and the plaintiffs, not the general public of the state of New York. Ms. James takes the backlash from the public, stokes it further, and then has the audacity of asserting that it is the plaintiffs and their speakers who will incite and create violence. This argument must be rejected.

## II.   APPELLEES HAVE SUFFICIENTLY PLEAD STANDING

A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.' " *Id*. 560 - 61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury in fact, meaning "an invasion of a

legally protected interest which is (a) concrete and particularized . . . and (b) actual

or imminent, not 'conjectural' or 'hypothetical.' " *Id*. at 560.

In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court

considered Article III's standing requirement as it related to certain statutory claims. The

Court observed that, in addition to traditional tangible harms, "[v]arious intangible harms

can also be concrete" for Article III purposes. *Id.* at 425. "Chief among them are injuries

with a close relationship to harms traditionally recognized as providing a basis for

lawsuits in American courts." *Id.* The Court named, as the first example, "***reputational***

***harms***." *Id.*

The plaintiffs' complaint is loaded with allegations that defendant's letter falsely

associated them with racist, "white nationalist ideals;" the "Great Replacement Theory;"

a racially motivated shooting in Buffalo, New York,  and other "racially motivated

violence." Dkt. #1, ¶¶ 13, 21, 27, 42, 64, 68. Plaintiffs allege specific damages flowing

from defendant's statements: injury to plaintiffs' reputations; harm to Doyle's community

relationships, and specifically with communities of color; and an increased likelihood of

violence towards plaintiffs. Dkt. #1, ¶¶ 13, 14, 39, 43, 53, 64.

The plaintiffs have pled injuries that are traceable to the defendant, and which

would have been redressed if the appellant had retracted her letter. (Dkt 1,  ¶¶ 13, 14, 39,

40, 43, 44). The issue of cancelled tickets after the letter was circulated is one of fact. The

plaintiffs assert that many tickets were canceled after Ms. James published her letter,

indicating causation. Further, the plaintiffs are not required to prove causation

conclusively at the Motion to Dismiss stage - "The threshold for establishing causation at

the pleading stage is modest, as there need only be a "substantial likelihood" that Defendant caused Plaintiff's harm" *Metzler v. Pure Energy U.S. LLC*, 21-CV-9798 (VEC), at \*5 (S.D.N.Y. Feb. 6, 2023).

Given the timing of the ticket cancellations coinciding with the publishing of the letter, there is a substantial likelihood that the letter contributed to the cancellations and this question cannot be resolved through a motion to dismiss. (Dkt 1, ¶ 43). "Even harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes." *Id.*

The defendant's argument that the plaintiffs' claims fail to plead damages resulting from her conduct is not persuasive or accurate at this stage, as "[t]his argument is not a basis to dismiss the pleadings. " *Bos. Consulting Grp. v. NCR Corp.*, 19 Civ. 10156 (LGS), at \*12 (S.D.N.Y. Sep. 24, 2020); (stating that "BCG also argues that the Counterclaims fail to plead damages that resulted from BCG's alleged misconduct. This argument is not a basis to dismiss the pleadings").

Appellant further states that she "writes to remind" plaintiffs of New York laws that prohibit racially motivated violence or interference with civil rights, mentioning her office's power to "investigate," "damages," "penalties," and her power to "take action against any business engaged in significant fraud or illegality." Dkt. #1, pp. 21-22. Finally, Ms. James stated: "We stand ready to investigate any violation of the laws above and, if necessary, to enforce them to the fullest extent available." (emphasis added). Dkt. #1, p. 22.

Appellant's letter has a heavy-handed, ominous tone and tells plaintiffs that: (1) she considers their own past statements concerning and "extremist," (2) she believes that "such rhetoric" could lead to "violent or unlawful conduct" at the upcoming event; and (3) she "stands ready" to investigate and enforce violations of New York laws, whose penalties she enumerates. Dkt. #1, pp. 21-22. This is neither "even-handed" nor a mere "entreaty."

Construing plaintiffs' allegations as true, granting qualified immunity at this juncture is not appropriate. First, it has long been clearly established that "implied threats to employ coercive state power to stifle protected speech" violate the First Amendment. *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983). Defendant does not argue otherwise.

Second, as the above discussion illustrates, the Second Circuit has clearly delineated the distinction between "attempts to convince and attempts to coerce," *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003), such that the right to be free from such coercion was "clearly established" in a "more particularized" sense. *Vullo*, 49 F. 4th at 719.

Defendant's letter is qualitatively different from the statements in *Vullo*, and defendant's characterization of her letter as merely "voicing concerns," Dkt. #13-1, p. 33, ignores the letter's overall tone and substance. See *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007) ("[I]t is necessary to consider the entirety of the defendants' words and actions in determining whether they could reasonably be interpreted as an implied threat.").

In order to have standing, a plaintiff must establish three elements. A plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Diaz v. FCI Lender Servs., Inc*., 17-CV-8686 (AJN) (S.D.N.Y. Sep. 28, 2018).

The plaintiffs have pled injuries that are traceable to the defendant, and which would be redressed had the appellant retracted her letter. (Dkt # 1, ¶¶ 13, 14, 39, 40, 43, 44). The issue of cancelled tickets after the letter was circulated is one of fact. The plaintiffs assert that many tickets were canceled after Ms. James published her letter, indicating causation. The plaintiffs were also forced to hire additional security for the event to protect the speakers and the participants. Dkt # 1, ¶ 40. The plaintiffs are not required to prove causation conclusively at this point, as "The threshold for establishing causation at the pleading stage is modest, as there need only be a "substantial likelihood" that Defendant caused Plaintiff's harm" *Metzler v. Pure Energy U.S. LLC*, 21-CV-9798 (VEC), at *5 (S.D.N.Y. Feb. 6, 2023).

## III.    APPELLEES' RETALIATION CLAIM SURVIVES AT THIS STAGE

The intent of Ms. James in sending her letter is a question of fact, not one of law. The appellant has not presented any evidence indicating that her motives were not malicious and designed to chill the plaintiffs' speech. Simply characterizing the plaintiffs' allegations as "conclusory and speculative" is not persuasive. Intent is rarely conclusively proved or disproved on its face, and it can certainly be reasonably inferred at the pleading stage…. "Under New York Law, intent may be inferred from a

defendant's conduct and the surrounding circumstances." *Vivar v. Senkowski*, 335 F. Supp. 2d 344 (E.D.N.Y. 2004); "A person's intent may be inferred from his acts and conduct." *Swift v. Superintendent*, 9:18-CV-01204 (GTS/TWD), at \*22 (N.D.N.Y. Feb. 17, 2022); "Intent may be inferred from the natural and probable consequences of a defendant's conduct." *United States v. Turner*, 18-cr-00068, at \*20 (S.D.N.Y. Jan. 31, 2023).

The defendant argues that she stated only "factual assertions" in the letter, and thus, "assertions that the letter was threatening and coercive must be rejected." Dkt # 13, p. 15. This directive from the defendant actually contradicts the standard of review for a motion to dismiss… "In deciding a motion to dismiss, a court accepts the **non-moving party's** factual allegations as true and draws all reasonable inferences in its favor." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 389 (E.D.N.Y. 2017).

The appellant asks the Court, through her Appeal, to accept *her* factual allegations as true, and to draw all reasonable inferences in *her* favor. This is antithetical to the well-settled standards of a motion to dismiss. The appellant argues that "AG James' motivation is patent from the letter itself." It certainly is, just not in the way she asserts. Ms. James makes multiple untrue statements, associates the plaintiffs with "white nationalists", "extremists", "a racist mass shooting that killed 10 people", and "violent and hateful conduct". Ms. James then cites the penalties under New York for her fabricated concerns, which, in totality, can reasonably inferred as a covert threat from a government official.

The appellant argues that the Court should reject the plaintiffs' conclusions concerning her state of mind, while simultaneously instructing the court to accept her own. This further solidifies the rule that "Whether or not a given intent existed, is, of course, a question of fact." *Press v. Chemical Investment Services Corp.*, 166 F.3d 529, 538 (2d Cir. 1999); "[t]he issue of intent is typically a question of fact for the jury" *Banco De La Republica De Colombia v. Bank of N.Y. Mellon*, 10 Civ. 536 (AKH), at *24 n.8 (S.D.N.Y. July 26, 2013).

## IV. THE APPELLANT'S STATEMENTS ARE NOT SHEILDED BY PRIVILEGE

The case of *Gautsche v. State*, 67 A.D.2d 167, 169 (3d Dep't 1979) does not apply to the appellant's claim of privilege. In *Gautsche*, the Appellant asserts that "[b]ecause the press release was related to the office of the Attorney General's investigation and prosecution of alleged fraud or illegality under Executive Law § 63(12), the court held that the statements in the press release were absolutely privileged." However, this is not entirely accurate.

Prior to releasing the statement against *Gautsche*, the Attorney General involved in that case was already investigating them to prevent charity fraud. (*Gautsche *167*). Said Attorney General then petitioned the Supreme Court for an order enjoining the plaintiffs from engaging in fraud while conducting business. Because *Gautsche* was already under investigation, the court ruled that "The Attorney-General, being an executive official of cabinet rank, is absolutely privileged to publish false and defamatory

14

matter of another in exercising the functions of his office so long as the publication has some relation to the executive proceeding in which he is acting." *Id*. This decision by the court was premised by the fact that the plaintiff was already being investigated for crimes, and so determined that "[t]he Attorney-General has a statutory duty to investigate fraud or illegality in the carrying on, conducting or transacting of business and is authorized to apply to the Supreme Court for an order enjoining the continuance of such business." *Id*. Here, there was no such investigation or executive proceeding as was present in *Gautsche*.

## V. ABSOLUTE PRIVILEGE DOES NOT APPLY

Absolute privilege "has been applied sparingly since it is rarely in the public interest to leave without remedy those who have been maliciously defamed." *Kilcoin v. Wolansky*, 428 N.Y.S2d 272, 276 (N.Y. App. Div. 1980).

"Absolute privilege does not, of course, mean that a public official can always defame with impunity." *Lombardo v. Stoke*, 222 N.E.2d 721, 724 (N.Y. 1966). "He may still be sued if the subject of the communication is unrelated to any matters within his competence . . . or if the form of the communication—e.g., a public statement—is totally unwarranted." *Id.* "In such cases, absolute privilege would do great harm to individual victims without improving the service of government." *Id.* at 725 (citation and internal quotations omitted).

The general duties of the New York Attorney General are set forth in New York Executive Law § 63. As relevant here, they include: the prosecution and defense of all

proceedings in which the state is interested; the investigation, upon the request of the governor or other state officials, of certain indictable offenses; upon the request of the commissioner of labor or the state division of human rights, the prosecution of civil actions for discrimination; the prosecution of criminal offenses; and application to state courts for orders enjoining fraudulent or illegal acts. N.Y. Exec. Law §§ 63(1), (3), (9), (10), (12).

The letter to plaintiffs was not written to fulfill any of these duties because defendant had initiated no investigation, prosecution, or any other governmental process against plaintiffs. In fact, defendant's letter does not reference any actual or suspected unlawful conduct by plaintiffs. Defendant cites no authority that would afford her absolute immunity for voicing "concerns" outside the context of some official investigation or proceeding connected with the above duties. Instead, absolute immunity shields government actors for their "official participation in the processes of government." Doran, 509 N.Y.S.2d at 52.

Here, the appellant's letter is untethered to *any official process* involving the plaintiffs. The policy rationale insulating an official from liability for libelous speech is thus not served by affording her letter absolute immunity. "In order to overcome the qualified privilege, a plaintiff must sufficiently allege that the statements were published with actual malice, i.e., that defendant acted out of personal spite or ill will, with reckless disregard for the statement's truth or falsity, or with a high degree of belief that [her] statements were probably false." That is exactly what has occurred here. Plaintiffs

Complaint is replete with allegations of actual malice, spite, and ill-will against Ms. James.

However, in general, the issue of actual malice is more appropriately weighed at a later stage of the proceedings than at the motion to dismiss stage." See also *Krusen v. Moss*, 105 N.Y.S.3d 607, 611 (N.Y. App. Div. 2019) ("Furthermore, under the circumstances of this case, discovery is necessary to allow plaintiff to explore defendant's knowledge and motivation for making the alleged defamatory statements.").

## VI.    APPELLEES' HAVE ESTABLISHED ACTUAL MALICE

Malice has now assumed a dual meaning, and we have recognized that the constitutional as well as the common-law standard will suffice to defeat a conditional privilege *(see, Loughry v Lincoln First Bank,* 67 N.Y.2d, at 376, *supra; O'Rorke v Carpenter,*55 N.Y.2d 798, 799; *Stillman v Ford,* 22 N.Y.2d, at 53, *supra; see also,* Restatement §§ 600, 603, comment *a). Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992).

Under the *Times* malice standard, the plaintiff must demonstrate that the "statements [were] made with [a] high degree of awareness of their probable falsity" *(Garrison v Louisiana,* 379 U.S. 64, 74). In other words, there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication" *(St. Amant v Thompson,* 390 U.S. 727, 731; *see also,* Restatement § 600, comment *b). Id*.

The plaintiffs have sufficiently pled that the statements made by the appellant were made with "high degree of awareness of their probable falsity" (See Dkt # 1, ¶¶ 12, 14, 15, 16, 22-26, 34, 36, 42; plaintiffs repeatedly accuse Ms. James of publishing knowingly false information).

In *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968), the Supreme Court provided examples of facts that could likely show a finding of actual malice, including a story that was fabricated by defendant or completely "unverified;" "allegations are so inherently improbable that only a reckless man would have put them in circulation;" and "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Id.* at 731.

The appellant cannot honestly argue that she believed that the plaintiffs are white nationalist extremists who are propagating genocidal ideologies, creating violence, and contributing to mass shootings, and she infers all of this and more. Ms. James' letter fails to provide any basis for her accusations. They were in fact "fabricated stories", which recklessly endangered the plaintiffs, and appellant had no occasion to ever "doubt her claims", because she is the one that made them up in the first place.

Arguing that the defamatory statement does not refer to the plaintiffs is no more persuasive. There is little doubt that the appellant's goal was to place the plaintiffs in the same category ideologically as mass shooters and other violent and extremist individuals, and this fact can be reasonably inferred from the letter, as well as her defense of her actions as demonstrated in her Motion to Dismiss. Dkt # 13, pp.14-15. The appellant's

own case reference confirms this, stating that '[T]he plaintiff must show that the language used, in light of the surrounding circumstances, was able to be understood to refer to the plaintiff. *DeBlasio v. North Shore University Hospital*, 213 A.D.2d 584, 585 (2d Dep't 1995)." Dkt # 13, p.36. The first paragraph of the letter accuses the plaintiffs of "past extremist statements made **by yourselves**…" However, in citing the letter, the appellant removes this line. They claim that Ms. James was "only concerned about **featured speakers**." (*Id.*) This is plainly inaccurate and intentionally misleading.

Defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380-81 (N.Y. 1995). To state a claim for defamation by implication, "a complaint must make a rigorous showing that the language of the communication as a whole not only can be reasonably read both to impart a defamatory inference but also that it affirmatively suggest[s] that the author intended or endorsed that inference." *Kesner v. Dow Jones & Co., Inc.*, 515 F.Supp.3d 149, 173 (S.D.N.Y. 2021); *see also Cabello-Rondon v. Dow Jones & Co., Inc.,* No. 16-CV-3346 (KBF), 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017) ("[U]nder New York law, a plaintiff alleging defamation by implication must show that defendants affirmatively intended such an implication.") (quoting *Biro v. Conde Nast*, 883 F.Supp.2d 441, 465-66 (S.D.N.Y. 2012)); see *also Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (N.Y. Sup. Ct. 2014).

According to the Defendant, "only facts that are falsifiable - not statements of opinion or belief - can be the subject of a defamation action. *Brian v. Richardson*, 87

N.Y.2d 46, 50-51 (1995)." The following instruction is also taken from *Brian,* where the Plaintiff's original complaint was dismissed on the determination that the publication against him was a nonactionable statement of the author's opinion: "The correctness of this determination depends on the proper application of the principles established in *Immuno A.G. v Moor-Jankowski*( 77 N.Y.2d 235, *cert denied* 500 U.S. 954), in which this Court held that **both the immediate context and the broader social context in which a published statement was made** should be considered in determining whether the statement is one conveying opinion or fact. (*Brian* at 48).

The court also ruled that "we have consistently held that a libel action cannot be maintained unless it is premised on published assertions of *fact (Gross v New York Times Co., supra,* at 152-153; *Immuno A.G. v Moor-Jankowski, supra; see also, Milkovich v Lorain Journal Co.,* 497 U.S. 1, 1721). (*Id.*)

Moreover, the New York courts have consistently held that "[m]aking a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation." *Thomas H. v. Paul B.* , 18 N.Y.3d 580, 584, 942 N.Y.S.2d 437, 965 N.E.2d 939(2012) (citing *Geraci v. Probst* , 15 N.Y.3d 336, 344, 912 N.Y.S.2d 484, 938 N.E.2d 917 (2010) ; *Foster v. Churchill* , 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996)). That is precisely the case here.

The appellant's letter presents the plaintiffs as white nationalist, racist extremists, who espouse rhetoric that could result in violence and even murder. Appellant's false inferences are carefully crafted to associate the plaintiffs with violent extremists with

whom they actually have nothing to do with. Finally, Appellant cites New York laws that were in no danger of being violated.

"Substantial truth" is the standard by which New York law, and the law of most other jurisdictions, determines an allegedly defamatory statement to be true or false. *See Masson v. New Yorker Magazine, Inc.* , 501 U.S. 496, 516, 111 S.Ct. 2419, 115 L.Ed.2d 447(1991) ("The common law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth." *see also Franklin v. Daily Holdings, Inc.* , 135 A.D.3d 87, 21 N.Y.S.3d 6, 12 (1st Dep't 2015). "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.*

The question here is whether or not the letter, taken as a whole, presents factually accurate information that would not have a different effect on the mind of the reader, other than its intended truth.

The letter did not simply remind the plaintiffs of New York law. It also intentionally associates the plaintiffs with horrible acts and immoral rhetoric "made by [them]selves and other featured speakers on the Tour". Very few readers, in fact, would reasonably see this letter as an innocent reminder, particularly when Ms. James' office elects to not send such letters to any other political organization who seeks to hold an event in New York, and certainly none who associate with her party. The intent of her letter was precisely to abuse her authority to defame the plaintiffs by implicating them as being at least partially responsible for horrendous acts of violence and racism and

instructs them to "... take all necessary steps to ensure that the event complies fully with the requirements of New York's civil rights laws and all other applicable state and federal statutes." This is a demand made by Ms. James that she does not expand upon. Ms. James seems here, to be covertly threatening the plaintiffs that if they do not take "necessary steps" but doesn't explain what steps they are and where they can be found. Certainly, nothing in New York civil rights laws statutorily describes how political events must be organized and if Ms. James were truly concerned about the event, she would have elaborated on what these steps might be, rather than presenting a blanket threat to the plaintiffs which was premised on falsehoods, political bias, and animus.

Appellant cited multiple penalties under the law the plaintiffs could face if they don't take her "necessary steps", which is a covert threat. Her vagueness related to these "steps" indicates her actual lack of concern, and her characterizations and inferences of the plaintiffs and the Tour are grossly inaccurate and in fact, are discriminatory and racist.

## CONCLUSION

Ms. James has not shown that she is entitled to any immunity or privilege, nor that her letter qualifies as a protected opinion or statement of fact. The implications of her letter were pled sufficiently by the plaintiffs, and intent is not an issue that is appropriate for resolution here. The plaintiffs have also sufficiently pled actual malice through their complaint, and the defendant's motion is littered with non-parallel caselaw and inaccurate interpretations of prior court rulings.

Accordingly, the District Court's decision must be upheld.